

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*United States District Courthouse*
*300 Quarropas Street*
*White Plains, New York 10601*

January 3, 2020

**BY ELECTRONIC MAIL and CM/ECF**

The Honorable Lorna G. Schofield
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 01/03/2020

    Re:   *United States v. William Ramos*,
           14 Cr. 484 (LGS)

Dear Judge Schofield:

    The Government writes respectfully to request an adjournment of the status conference currently scheduled for this coming Tuesday, January 7, 2020.

**I.    Background: The Arrest, Plea, and Sentencing of William Ramos**

    By way of background, on March 18, 2014, defendant Williams Ramos was charged in a three-count complaint with: (1) participating in a conspiracy to commit a Hobbs Act robbery of a suspected drug dealer in the Bronx, New York, in violation of 18 U.S.C. § 1951; (2) participating in a conspiracy to distribute and possess with intent to distribute (a) 500 grams and more of cocaine, and (b) marijuana, in violation of 21 U.S.C. § 846; and (3) using and carrying firearms during and in relation to, and possessing firearms in furtherance of, a Hobbs Act robbery and a drug trafficking crime, which firearms were brandished, and aiding and abetting the same, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2. Had Ramos been convicted of the charges in the complaint, he would have faced a mandatory minimum sentence of 12 years' imprisonment.; had he been convicted of the charges in the complaint *and* the Government filed a prior felony information, pursuant to 21 U.S.C. § 851, he would have faced a mandatory minimum sentence of 17 years' imprisonment.

    On July 21, 2014, Ramos pleaded guilty, pursuant to a plea agreement, to the sole count of information 14 Cr. 484 (LGS), which charged him with using and carrying firearms during and in relation to, and possessing firearms in furtherance of, a Hobbs Act robbery conspiracy, which firearms were brandished, and aiding and abetting the same, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2. As a result, he faced

a mandatory minimum sentence of seven years' imprisonment, which was required to run consecutively to any other sentence. As part of his plea agreement, Ramos agreed:

> It is further agreed that should the conviction following the defendant's plea of guilty pursuant to this Agreement be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this agreement (including any counts that the Government has agreed to dismiss at sentencing pursuant to this Agreement) may be commenced or reinstated against the defendant, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement or reinstatement of such prosecution. It is the intent of this Agreement to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date that this Agreement is signed.

The Court sentenced Ramos to seven years' imprisonment, to be followed by three years' supervised release, and imposed a mandatory $100 special assessment, on October 27, 2014.[1]

## II.  The Supreme Court's *Johnson*/*Davis* Jurisprudence

The Supreme Court decided, on June 26, 2015, that the definition of a "violent felony" in the so-called "residual clause" of the Armed Career Criminal Act (the "ACCA"), 18 U.S.C. § 924(e)(2)(B), was unconstitutionally vague. *Johnson v. United States*, 135 S. Ct. 2551 (2015). However, the law was far from clear as to whether *Johnson*, in fact, affected Section 924(c)'s risk-of-force clause, which had similar, but not the same, wording as the ACCA's residual clause, and was contextually different.

The Second Circuit decided, on September 10, 2018, that *Johnson* did *not* require courts to vacate Section 924(c) convictions predicated on risk-of-force-clause crimes of violence (although it set forth new standards, which standards Ciprian's conviction would meet). *United States v. Barrett*, 903 F.3d 166 (2d Cir. 2018). On June 24, 2009, the Supreme Court determined that, pursuant to the principles announced in *Johnson*, Section 924(c)'s risk-of-force clause was unconstitutionally vague. *United States v. Davis*, 139 S. Ct. 2319 (2019). The Supreme Court then granted Barrett's petition for a writ of *certiorari* and remanded the case for further proceedings.

---

[1] Two days later, the Court corrected the judgement to indicate that the sentence it imposed was to run consecutively to any other sentence, as was required by law.

In light of *Davis*, on August 30, 2019, the Second Circuit reversed its earlier decision and held that Section 924(c)'s risk-of-force clause was *per se* unconstitutionally vague, and that a conspiracy to commit a Hobbs Act robbery therefore did not qualify as a crime of violence for the purposes of Section 924(c). *United States v. Barrett*, 937 F.3d 126 (2d Cir. 2019).

### III. Developments in Ramos's Case

Ramos did not file a Section 2255 motion after *Johnson*. On October 13, 2019, Ramos wrote this Court asking for counsel to be appointed to advise him about *Davis* issues. (Docket Entry 32). Approximately two weeks later, Ramos's attorney, Sarah Kunstler, Esq., asked this Court to schedule a status conference, and also "ask[ed] that the Court ask for CJA counsel on duty to be present, as it is likely, after consultation with my client, that I will be making a change of counsel request." (Docket Entry 34).

On December 2, 2019, this Court scheduled a status conference for January 7, 2020. (Docket Entry 35). Later that week, I submitted a Section 3621(d) order—the federal equivalent of a writ—to the United States Marshals, seeking Ramos's transportation to the January 7, 2020, conference. Also later that week, Ramos wrote to the Court, *pro se*, discussing the potential ramifications of *Davis* on his convictions, and also expressing potential dissatisfaction with his attorney: "My lawyer has constantly been trying to advise me against going back to court, we spoke over the phone and [I] told her everything I've mentioned in my letter to you. She keeps telling me that my plea agreement is the problem." (Docket Entry 36 at 3).

To be clear: Ramos is correct that, should he file a timely and procedurally cognizable Section 2255 motion,[2] he is entitled to have his Section 924(c) count vacated in light of *Davis*. However, Ms. Kunstler is also correct that Ramos's "plea agreement is the problem," because it explicitly permits the Government to commence or reinstate any charges against Ramos "notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement or reinstatement of such prosecution."

Accordingly, despite Ramos's request that, "[i]f [his] case qualifies to get vacated please allow [him] to go home," even if Ramos does file a timely and procedurally cognizable Section 2255 motion, he will not be allowed to go home; rather, the Government would ask a law enforcement agent—including, possibly, the marshals in the courtroom—to arrest Ramos upon this Court's vacatur of Ramos's sole count of

---

[2] Until the issues are fully briefed, it is impossible to determine whether such a motion would be timely or procedurally cognizable.

conviction, and Ramos would face charges with significantly higher potential penalties than that to which he agreed to plead guilty. And, of course, Ramos's prior plea demonstrates that he understands the nature of the proof and case against him.

Ramos received huge benefits from his negotiated plea after a particularly vicious armed drug robbery; if he chooses not to give the Government—and society—the benefit of the bargain, he should not expect the Government to do otherwise.

In light of the serious potential consequences Ramos faces, he should have the opportunity to meet further with counsel—whether Ms. Kunstler or other counsel—before making a momentous decision of how to proceed.

## IV.     The Upcoming Conference

Although the Government asked the U.S. Marshals to transport Ramos to the District by January 7, 2020, this morning, the U.S. Marshals informed me that Ramos—who is housed in South Carolina—will not be here by that time. They have asked for approximately one-and-a-half weeks. Accordingly, the Government respectfully requests that the conference be adjourned to the week of January 21st or the week of January 27th. I have spoken with defense counsel, who has indicated that she is, or can make herself, available both of those weeks. I have various obligations, but could appear on January 23rd or 24th, or much of the following week.

However, I have spoken with the Court's Deputy Clerk, who told me that the Court's schedule those two weeks is currently in flux. Because the Marshals need a date certain in order to execute the federal writ, I respectfully request that the Court set a control date and time for a conference on January 23rd or 24th, understanding that, when Ramos arrives, I will coordinate with Ms. Kunstler to bring Ramos before a United States Magistrate Judge to determine whether he wants, qualifies for, and should be appointed new counsel,[3] and then defense counsel—whether Ms. Kunstler or new counsel—and I could work with the Court's Deputy Clerk to find a hard date that gives counsel sufficient time to speak with Ramos before we appear before Your Honor.

Application Granted. The status conference currently scheduled for January 7, 2020 is adjourned to January 23, 2020 at 11:00 a.m. Defendant shall confer at that time with the CJA counsel on duty regarding the issues raised in this letter. If after such consultation, Defendant wishes to request new counsel, the parties shall appear before the Magistrate Judge on duty regarding the possible appointment of new counsel. Counsel are then directed to contact the Court to set a new date for the January 23 conference. The Clerk of the Court is directed to terminate the letter motion at docket number 37.
Dated: January 3, 2020

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE

---

[3] The Court's Deputy Clerk told me that he expected the Court to refer that issue to the Magistrate Court.

Please feel free to contact me with any questions or issues.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By: _____
Michael D. Maimin
Assistant United States Attorney
(914) 993-1952

cc: Sarah Kunstler, Esq. (by electronic mail and CM/ECF)